# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0881V
UNPUBLISHED

| | |
|---|---|
| ZEHRA RIZVI,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: May 13, 2022<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Alison H. Haskins, Maglio Christopher & Toale, PA, Sarasota, FL,* for Petitioner.

*Jennifer A. Shah, U.S. Department of Justice, Washington, DC,* for Respondent.

## **FINDINGS OF FACT**[1]

On February 8, 2021, Zehra Rizvi filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Table, after receiving the influenza ("flu") vaccine in her left deltoid on October 9, 2019. Petition at 1, ¶¶ 3, 15-16, 18.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

The vaccine record does not indicate the site or method of administration. Exhibit 1 at 4. And the later provided vaccine consent form indicates the vaccine was administered intramuscularly in Petitioner's *right* arm, rather than *left* arm as alleged. Exhibit 23 at 7. Nevertheless, and for the reasons discussed below, I find the flu vaccine was likely administered in Petitioner's left arm, as alleged.

### I.     Relevant Procedural History

During the three months after her petition was filed, Ms. Rizvi filed the medical records required under the Vaccine Act. Exhibits 1-21, ECF Nos. 6-7, 9-10; *see* Section 11(c). On May 27, 2021, the case was activated and assigned to the Special Processing Unit (OSM's process for attempting to resolve certain, likely-to-settle claims (the "SPU")). ECF No. 11.

Because the vaccine record, provided on February 22, 2021, did not indicate the site or method of vaccination, Petitioner was ordered to file additional documentation or evidence to establish that she received the flu vaccine intramuscularly in her left deltoid as alleged. Order, issued Aug. 16, 2021, ECF No. 14. After multiple requests for additional time, Petitioner filed updated orthopedic records and additional documentation - but which indicates the flu vaccine was administered in Petitioner's *right* rather than *left* arm. Exhibits 22-23, filed Feb. 28, 2022, ECF No. 21. On March 30, 2022, she filed supplemental declarations[3] from herself and her son, along with a motion requesting a factual finding regarding the site of vaccination. Exhibits 24-25, ECF No. 24; Motion for Finding of Fact Regarding Injection Site ("Motion"), ECF No. 25.

A deadline for a responsive filing from Respondent was set, and Respondent was informed that, due to my desire to address this issue prior to final HHS review, he should alert me if he decided not to file a response. Non-pdf Order, issued March 31, 2022. On April 28, 2022, Respondent informed me that he did not wish to file a response. The matter is now ripe for adjudication.

### II.    Issue

At issue is whether Petitioner received the vaccination alleged as causal in her injured *left* shoulder, rather than her *right* shoulder as the vaccine record indicates.

---

[3] These declarations were signed under penalty of perjury as required by 28 U.S.C.A. § 1746.

### III.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined.

*Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.    Finding of Fact

I make the finding regarding site of vaccination after a complete review of the record to include all medical records, affidavits, and additional evidence filed. Specifically, I note the following evidence:

- Petitioner's prior medical records reveal no prior complaints of shoulder pain. *See generally,* Exhibits 8, 11, 14.

- Petitioner received the flu vaccine alleged as causal on October 3, 2019. Exhibits 1, 23. On the second page of the consent form, under the pharmacist's signature, the choices of "IM" and "RA" are circled – seeming to indicate that the vaccine was administered intramuscularly in Petitioner's right arm. Exhibit 23 at 7. No other immediately-contemporaneous record sets forth the administration situs.

- In her latest provided declaration, Petitioner indicated that prior to administering flu vaccines to herself and her son, the technician asked them which arm was dominant. Exhibit 24 at ¶¶ 5-6. According to Petitioner, he then administered the flu vaccines in their *non-dominant* arms – the left arm for both. *Id.* In his declaration, Petitioner's son echoes these same

4

assertions. Exhibit 25 at ¶¶ 3-4. He also recalled that Petitioner began complaining of pain in her left arm that evening *Id.* at ¶ 5.

- Approximately two weeks later, on October 16, 2019, Petitioner was treated by an orthopedist at the same practice as her husband, who is an endocrinologist, complaining of left shoulder pain and weakness since receiving the flu vaccine in that shoulder. Exhibit 2 at 6; *see* Exhibit 24 at ¶ 11 (Petitioner's declaration explaining her husband's relationship to the orthopedist). The record indicates Petitioner is right-hand dominant. Exhibit 2 at 6. The orthopedist administered a cortisone injection, provided pain medication, and instructed Ms. Rizvi to undergo an MRI after her move to Atlanta. *Id.* at 7.

- After relocating to Atlanta, Petitioner was seen by an orthopedist on January 27, 2020. Exhibit 5 at 19-21. Again, she was noted to be right-hand dominant, and complained of left shoulder pain since receiving an improperly administered flu vaccine in her left shoulder. Reporting little relief after the cortisone injection and medication administered and prescribed in mid-October 2019, she described her pain as located deep in her shoulder and radiating into her distal biceps area. Petitioner was assessed as having a left shoulder injury related to vaccine administration with secondary rotator cuff impingement," not requiring surgery. *Id.* at 20. She was instructed to undergo physical therapy, and the orthopedist agreed that Petitioner's plan to try medical acupuncture was "reasonable." *Id.* He added that an MRI could be ordered if Petitioner was "not making progress." *Id.*

- On January 30, 2020, Petitioner sought treatment from an acupuncturist, again complaining of left shoulder pain from a flu vaccine received four months earlier. Exhibit 4 at 1. Petitioner described her pain as severe and located in her left shoulder and biceps. *Id.* at 5.

- At her gynecology appointment on March 9, 2020, Petitioner mentioned a history of a shoulder injury from a flu vaccine. Exhibit 8 at 7.

- On April 10, 2020, Petitioner sought follow-up orthopedic treatment of her left shoulder injury during a telehealth appointment. Reporting a worsening of symptoms, Petitioner indicated she had pursued acupuncture during the month of February, had been unable to attend PT due to the COVID pandemic, and had attempted to perform exercises at home. Exhibit 5 at 16. However, she noticed that she was also experiencing decreased range of motion. *Id.* The orthopedist observed that Petitioner was not making

progress and that some of her pain appeared to be neuropathic. *Id.* at 17. Petitioner chose not to take oral steroids – indicating she would continue her current pain medication, and agreed to undergo an MRI. *Id.*

- Performed on April 13, 2020, the MRI showed a mild amount of fluid, but no injury to the rotator cuff. Exhibit 5 at 13.

- On April 15, 2020, Petitioner participated in a telehealth appointment with Dr. Marko Bodor in Northern California. Exhibit 3 at 2-3. She again reported left shoulder pain following receipt of the flu vaccine in October 2019. *Id.* at 2. Dr. Bodor observed that her condition had progressed to a frozen shoulder and discussed the possibility of her undergoing ultrasound guided anesthetic injection if she was willing to come to California. *Id.* at 3. Petitioner underwent this procedure on April 23, 2020. *Id.* at 5.

- Petitioner began PT on May 8, 2020. Exhibit 16 at 21-24. At her initial session, she reported her "[s]ymptoms began after getting the flu shot in October of 2019." *Id.* at 22. By her fifth and final PT sessions on June 5, 2020, Petitioner indicated her condition was improving. *Id.* at 15.

- At her next orthopedic appointment on June 18, 2020, Petitioner reported improvement in her pain and ROM. Exhibit 5 at 4. However, she also complained of an aggravation of Achilles tendinopathy which she had suffered from for the last ten years. *Id.*

The above medical entries establish that when seeking medical treatment on multiple occasions during the year following the October 2019 vaccination, Petitioner consistently reported left shoulder pain, which she attributed to that vaccination. She also sought treatment close in time to her injury - visiting an orthopedist thirteen-days post-vaccination. Even when seen by her gynecologist for a well-woman appointment approximately five months post-vaccination, Petitioner mentioned her shoulder injury and attributed its cause to the flu vaccine she received.

Additionally, Petitioner provided a further rational as to why the vaccination was administered in her *left*, rather than *right* arm – the fact that she is right-hand dominant. This information is repeated in several contemporaneously created medical records describing treatment of Petitioner's left shoulder injury. And both Petitioner and her son indicated they were asked which arm they preferred right before the vaccination was given – and expressed a desire to avoid their dominant arm (a reasonable request that vaccinated individuals often make).

Based upon my experience resolving SPU SIRVA cases (more than 1,200 cases since my appointment as Chief Special Master) as well as additional SIRVA cases handled in chambers, I find it is not unusual for the information regarding site of vaccination to be incorrect.[4] In many instances, the information regarding situs is recorded prior to vaccination, and is not updated, even if the vaccine is then administered in the opposing arm.[5] Thus, although such records are unquestionably the first-generated documents bearing on issues pertaining to situs, they are not per se reliable simply *because* they come first – and in fact the nature of their creation provides some basis for not accepting them at face value.

I note that despite the above, there is reason herein to give weight to the vaccination form that supports a determination contrary to Petitioner's contention. The entry indicating site of vaccination on the record most specific to the disputed issue required the pharmacist to manually circle the option "RA." Information which requires specific action on the part of the vaccine administrator is generally given greater weight than information automatically generated within a computerized system. *See, e.g.*, *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020). And because most individuals are right-hand dominant, entries indicating a left arm administration may represent the nature default choice of the vaccine administrator. *See Mezzacapo v. Sec'y of Health & Hum. Servs.*, No. 18-1977V, 2021 WL 1940435, at *4 (Fed. Cl. Spec. Mstr. Apr. 19, 2021). Thus, the fact that a record reveals that a provider circled the right arm "option" on a vaccination form, as here, should be deemed significant – and in appropriate cases might be dispositive of the issue, especially if corroborated by other evidence.

Here, by contrast, the vaccine consent form is the *only* evidence in this case which supports a finding of right arm situs. And there is also reason to think that the document may have been completed prior to vaccination (at least the portion of this form which contains Petitioner's signature). Accordingly, given the general unreliability of these

---

[4] *See, e.g., Arnold v. Sec'y of Health & Hum. Servs.,* No. 20-1038V 2021 WL 2908519, at *4 (Fed. CL. Spec. Mstr. June 9, 2021); *Syed v. Sec'y of Health & Hum. Servs.,* No. 19-1364V, 2021 WL 2229829, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 28, 2021); *Ruddy v. Sec'y of Health & Hum. Servs.*, No 19-1998V, 2021 WL 1291777, at *5 (Fed. Cl. Spec. Mstr. Mar. 5, 2021); *Desai v. Sec'y of Health & Hum. Servs.*, No 14-0811V, 2020 WL 4919777, at *14 (Fed. Cl. Spec. Mstr. July 30, 2020); *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020); *Stoliker v. Sec'y of Health & Hum. Servs.*, No. 17-0990V, 2018 WL 6718629, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2018).

[5] In a recent ruling by another special master, the pharmacist who had administered the relevant vaccination actually testified that she inputs "left deltoid" into the computer system as a matter of course, without confirming the actual site of vaccination, based upon the assumption that most vaccinees are right-handed. *Mezzacapo v. Sec'y of Health & Hum. Servs.*, No. 18-1977V, 2021 WL 1940435, at *4 (Fed. Cl. Spec. Mstr. Apr. 19, 2021).

administration documents in the experience of SPU SIRVA cases, this evidence alone is not sufficient to counter Petitioner's clear, consistent, and close-in-time reports of left shoulder pain after receiving the flu vaccine *in her left arm* on October 9, 2019.

## V.      Scheduling Order

In August 2021, Petitioner was encouraged to finalize a demand and to obtain any needed documentation to support the amounts sought. Order, issued Aug. 16, 2021, at 1, ECF No. 14. Additionally, I expect the HHS review in this case to be completed in late May or early June 2022.

**Respondent shall file a status report providing his tentative position regarding the merits of Petitioner's claim or, at a minimum, an updated estimate of the timing of the HHS review by no later than <u>Tuesday, June 14, 2022</u>. Petitioner should continue to finalize her demand which she may convey to Respondent, along with her supporting documentation, at any time.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master